```
 1                  UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3        BEFORE THE HONORABLE JAMES LARSON, MAGISTRATE JUDGE

 4   ------------------------------)
                                   )
 5   DANNIE A. GUERRERO, et al.,   )
                                   )
 6                                 )
                   Plaintiffs,     )
 7                                 )
        v.                         )    No. C 09-4211 (JL)
 8                                 )
     GREENPOINT MORTGAGE FUNDING,  )
 9   INC., et al.,                 )
                                   )
10                 Defendants.     )    San Francisco, California
                                   )    Wednesday, November 18, 2009
11   ------------------------------)        (9 pages)


                     TRANSCRIPT OF PROCEEDINGS

     APPEARANCES:

     For Plaintiffs:         Michael Rooney Law Office
                             580 California Street
                             16th Floor
                             San Francisco, California 94104
                        BY:  MICHAEL PATRICK ROONEY

     For Defendant:          Severson & Werson
      (Greenpoint)           One Embarcadero Center
                             26th Floor
                             San Francisco, California 94111
                        BY:  KALAMA M. LUI-KWAN

     For Defendant:          Akerman Senterfitt, LLP
      (Aurora)               The Kittredge Building
                             511 Sixteenth Street
                             Suite 420
                             Denver, Colorado 80202
                        BY:  JUSTIN DONALD BALSER
```

CONNIE KUHL, RMR, CRR
Official Reporter - U.S. District Court  (415) 431-2020

| | |
|---|---|
| 1 | Wednesday, November 18, 2009 |
| 2 | (10:01 a.m.) |
| 3 | (In open court) |
| 4 | DEPUTY CLERK:  Calling civil case 09-4211, Danny |
| 5 | Guerrero, et al., versus Greenpoint Mortgage Funding, et al. |
| 6 | MR. ROONEY:  Mike Rooney appearing for the plaintiff. |
| 7 | THE COURT:  Good morning. |
| 8 | MR. LUI-KWAN:  Kalama Lui-Kwan for defendant |
| 9 | Greenpoint. |
| 10 | MR. BALSER:  Justin Balser on behalf of defendant |
| 11 | Aurora Loan Services. |
| 12 | THE COURT:  Justin? |
| 13 | MR. BALSER:  Balser, B-a-l-s-e-r. |
| 14 | THE COURT:  This is on for defendant's motion to |
| 15 | dismiss the complaint; and plaintiff's motion to remand to |
| 16 | state court.  I've read your papers.  It appears to me that the |
| 17 | defendant's motion to dismiss is well taken and that there are |
| 18 | virtually no facts alleged in the complaint, merely a number of |
| 19 | conclusions and requests for relief.  The offer to tender, so |
| 20 | to speak, is clearly insufficient.  And there's nothing wrong |
| 21 | with that statute. |
| 22 | I'll be happy to hear from you, Mr. Rooney, if you |
| 23 | wish to make a record. |
| 24 | MR. ROONEY:  I do, your Honor.  The plaintiff believes |
| 25 | the motion to dismiss to be over-reaching, and largely the |

```
 1   motion to dismiss was based on arguing the facts of the case
 2   rather than the facts that were contained in the complaint.
 3           And the complaint contained, I realize, a lot of
 4   paragraphs, but there were factual obligations in the complaint
 5   including the fact that the plaintiffs were misled by the
 6   broker and the lender as to the original terms of the note.
 7   Also that the terms of the note provided for entirely
 8   unconscionable repayment that would have been impossible based
 9   on the application that the defendants received for the payment
10   ever to -- or for the plaintiff ever to repay.  And on that
11   basis, for a lender doing a proper underwriting, it would have
12   been foreseeable at the inception of this thing that it would
13   end up in foreclosure.  And on that basis, we've brought these
14   claims.
15           If the Court would like more facts, more facts can be
16   pled, and I believe that's the standard here is whether the
17   plaintiff can add additional facts, and we can.  The original
18   complaint was drafted on the basis that what was required was
19   notice pleading, and that was also drafted for state court.
20           THE COURT:  Well, there are two new U.S. Supreme Court
21   changes that really change the game as far as that's concerned
22   called *Iqbal* and *Twombly*, and the latter case held that much
23   more than mere notice pleading is required these days.  I
24   acknowledge that this is a very difficult situation, that
25   thousands of people are in the same situation as your clients.
```

1  Unfortunately, I haven't seen a single case yet that's survived
2  a motion to dismiss unless the bank was willing to renegotiate.
3  But that appears to be moot here since the property's already
4  been sold.  So I think you're stuck with the requirements.
5          But in any event, I'll take another look at it and see
6  if I think that amendment of the complaint would help.
7          MR. BALSER:  If I may -- we both have a response.
8  Initially, though, I'd like to set forth the fact that counsel
9  argued that we're looking beyond the four corners of the
10 complaint, and there were certain things in his attachments I
11 think that belie his allegations.
12         First of all, counsel has made allegations in the
13 complaint that the payments have somehow shot up, but that it's
14 unconscionable.  The notice attached, it's an interest-only
15 loan, the payment hasn't gone up or down.  It's the same as it
16 was at the origination.  It's the same payment they failed to
17 make.  Maybe their personal issues caused them the inability to
18 make the payments.  But the allegation that there's some
19 payment shock is clearly untrue.
20         That goes to another point, which is the allegation,
21 which seems to be the only allegation in the opposition, was
22 that equitable tolling should apply.  Well, that's based on the
23 claim that, partially, the payment shot up.  They didn't know
24 these alleged issues occurred at origination until their
25 payment changed.  Well, if the payment never changed, that

1  allegation is nonsensical.
2            There's also the duty on behalf of borrowers or
3  anybody who reads a contract to know what they're getting into.
4  There's no allegation that they were deceived somehow, they
5  couldn't review the loan documents.  They allege that equitable
6  tolling should apply because they've recently sought the advice
7  of a lawyer, but that's not the standard under the law.  They
8  have to have some diligence whatsoever to at least figure out
9  what the loan terms were compared to what they thought they
10 were.  If it's based on the idea the payment has increased to a
11 point where it's unaffordable, that's not true.  So for that
12 purpose, I don't think leave to amend can be granted on many of
13 these claims.
14           As far as the opposition goes, there was no opposition
15 essentially to any of these claims.  Based on that counsel's
16 not shown that there's any additional facts that he could plead
17 which would get past the hurdle of stating a claim.  So leave
18 to amendment under this -- under that basis would be futile as
19 well.
20           Plus, there's been a -- there's recent case law in the
21 Eastern District that's held that failure to tender isn't
22 itself a bar to amendment.  And that's the *Wong* case before the
23 Eastern District which was the most recent case in which the
24 Court held that the failure to actually tender the amount due
25 on the loan at the time of foreclosure is a bar to amendment.

```
 1   So I think leave to amend this case would be futile.
 2           MR. ROONEY:  Your Honor, if I could answer
 3   individually.
 4           THE COURT:  Just a minute.  Go ahead.
 5           MR. LUI-KWAN:  I'd like to make a few points.  I'll
 6   try not to repeat anything that Mr. Balser just said.
 7           Three things:  First of all, as to the request for
 8   leave to amend, it's not clear to us what additional facts
 9   plaintiffs can allege.  The opposition had ample opportunity to
10   respond to our arguments with regard to the 19 claims that were
11   asserted against Greenpoint.  But none of the arguments in
12   opposition, first of all, responded to our arguments.  And
13   second of all, identify any facts that plaintiffs could allege
14   to cure the defects in the claims as pled.
15           And so it's not clear what, if anything, they could
16   allege in the amended complaint.
17           Second, with regard to the tender rule, as Mr. Balser
18   points out, even if there were facts that could be alleged in
19   an amended complaint, plaintiffs lack standing.  The tender
20   rule requirement is a standing requirement, and if they can't
21   satisfy that, which they clearly cannot, then it doesn't matter
22   if they have additional facts that they can plead.
23           Finally, with regard to plaintiffs' assertion that
24   they were misled by the broker and the lender, that's basically
25   a fraud claim.  But as we pointed out in our motion to dismiss,
```

1   their fraud claim fails for four reasons that I won't go into
2   now, but I'll just leave it at the point that plaintiffs
3   haven't responded to any of those four arguments in their
4   opposition and haven't done so here either.
5           THE COURT:  Now, Mr. Rooney.
6           MR. ROONEY:  Yes, your Honor.  First, I'd like to
7   respond that the complaint does not allege that the payment has
8   increased.  It alleges that the terms of the contract are
9   unenforceable because they provide for such a large increase
10  under their terms.  Whether that's occurred yet or not has
11  nothing to do with our request, for example, for a declaration
12  that the contract is unconscionable.  We've asked for
13  reformation of the contract on that basis.  And we've also
14  alleged that the trustee wasn't properly appointed at the time
15  of the sale.
16          As far as equitable tolling, again, that's not based
17  on whether the payment has shot up or not.  Here the duty to
18  read a contract is excused, and if the Court would allow me to
19  provide --
20          THE COURT:  Excused.
21          MR. ROONEY:  Allow me to provide a brief on this.
22  Where the plaintiff has a fiduciary, and they trust that
23  fiduciary to provide them with the terms of contracts.
24          THE COURT:  What are you talking about?  That's
25  nowhere in your papers.  What are you talking about?  Operating

1  with a fiduciary?
2              MR. ROONEY:  Yes, if you have a broker and you trust
3  him.
4              THE COURT:  Oh, my goodness.
5              MR. ROONEY:  You were entitled to rely on his
6  representation of what the contract says.  And there is case
7  law on that, your Honor.
8              Furthermore, when there are additional facts, I
9  believe can be cleared up in an amended complaint.
10             Furthermore, as far as the state claims and federal
11 claims, I'd like the chance to amend to include the federal
12 violations in the illegality prong of 17.200 and take this up
13 in state court as the plaintiff originally wanted.
14             THE COURT:  All right.  Any final response?
15             MR. LUI-KWAN:  Yes, your Honor.  Two things:  First of
16 all, with regard to equitable tolling, let's just assume for
17 the sake of argument that there are facts that they could
18 allege that could equitably toll the statute of limitations on
19 the RSPA claim and the TILA claim.  Even if they could do that,
20 their opposition hasn't addressed the other grounds for
21 dismissal of the TILA and RSPA claims.
22             That's Number 1.
23             And Number 2, as to the fiduciary duty point, as we
24 explained, as Greenpoint explained in the motion to dismiss on
25 Page 10, there's no duty that was owed to the plaintiffs.

```
1   There's no fiduciary relationship between a debtor and creditor
2   under California state and federal law.  *Price v Wells Fargo
3   Bank*, decided in 1989 by the California court of appeal;
4   *Wilshire Boulevard Building v. W.R. Grace*, which was decided by
5   the Ninth Circuit -- both hold that there's no such fiduciary
6   relationship.
7           THE COURT:  All right.  I'll take the matter under
8   submission.  You'll get a written order.
9           MR. ROONEY:  Thank you, your Honor.
10          MR. LUI-KWAN:  Thank you, your Honor.
11          MR. BALSER:  Thank you, your Honor.
12          THE COURT:  You're welcome.
13          (Adjourned)
14                              oOo
15
16                      CERTIFICATE OF REPORTER
17
18      I, Connie Kuhl, Official Reporter for the United
    States Court, Northern District of California, hereby certify
    that the foregoing proceedings were reported by me, a certified
19  shorthand reporter, and were thereafter transcribed under my
    direction into written form.
20
                        *[signature: Connie Kuhl]*
21          _____
22              Connie Kuhl, RMR, CRR
                Tuesday, December 29, 2009
23
24
25
```